# EXHIBIT A

1  Jeff Westerman (SBN 94559)
E-mail: jeff.westerman@zimmreed.com
2  **ZIMMERMAN REED LLP**
6420 Wilshire Blvd, Suite 1080
3  Los Angeles, CA 90048
(877) 500-8780 Telephone
4  (877) 500-8781 Facsimile

5  *Attorney for Plaintiff*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
6/30/2025 4:57:26 PM

Clerk of the Superior Court
By M. Clemens    , Deputy Clerk

6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                    FOR THE COUNTY OF SAN DIEGO

9

10  **CAROLYN JANE BLAKELY,**          **CASE NO.**    25CL034550N

11              **Plaintiff**

12  v.                                  **COMPLAINT FOR DAMAGES**

13                                      **1. NEGLIGENCE**

14  **ELUTIA, INC. F/K/A AZIYO**
**BIOLOGICS, INC., DCI DONOR**       **2. NEGLIGENCE**
15  **SERVICES, INC. D/B/A TENNESSEE**
**DONOR SERVICES, BERKELEY**         **3. STRICT PRODUCTS**
16                                      **LIABILITY**
**BIOLOGICS, LLC AS SUCCESSOR TO**
17  **ELUTIA, INC. F/K/A AZIYO**
**BIOLOGICS, INC., AND DOES 1-20**   **4. BREACH OF IMPLIED**
18                                      **WARRANTY OF**
**Defendants.**                      **MERCHANTABILITY**
19

20                                      **JURY TRIAL DEMANDED**

21

22

23

24                        **COMPLAINT**

25

        **COMES NOW** Plaintiff, Carolyn Jane Blakely, by and through her attorneys,
26

27  for her complaint against Defendants, Elutia, Inc. f/k/a Azyio Biologics, Inc., DCI

28  Donor Services, Inc. d/b/a Tennessee Donor Services, Berkeley Biologics, LLC as

                                        1
                            COMPLAINT FOR DAMAGES

1  successor to Elutia, Inc. f/k/a Aziyo Biologics, Inc., and Does 1-20 (collectively,

2  "Defendants"), and alleges as follows:

3

4  **I.   INTRODUCTION**

5      1.     This action seeks to recover damages for the personal injuries suffered

6  by Carolyn Jane Blakely which were substantially, directly, and proximately caused

7

8  by the wrongful conduct of Defendants in connection with the research, testing,

9  design, development, manufacture, tissue recovery, production, inspection, labeling,

10 advertisement, marketing, promotion, sale, and distribution of ViBone Moldable and

11 alloOss Plus lot #TDS222820 products subject to the voluntary recall on July 13, 2023

12

13 (collectively referred to as "Recalled Products" and ViBone Moldable is individually

14 referred to as the "Recalled Product" or "ViBone") as well as the human tissue used

15

16 to make these Recalled Products.

17 **II.   PARTIES**

18     2.     Plaintiff Carolyn Jane Blakely is and at all relevant times was a citizen

19

20 of the State of California, residing in San Diego.

21     3.     Defendant Elutia, Inc. f/k/a Aziyo Biologics, Inc. ("Aziyo") is a

22

23 Delaware corporation and maintains a principal place of business at 20 Firstfield

24 Road, Gaithersburg, MD 20878. Aziyo does business throughout the United States,

25 including conducting business in the State of California.

26     4.     Aziyo sells a variety of medical products, including orthopedic and

27

28 spinal repair products, as well as soft tissue reconstruction products.

5.     Aziyo developed, manufactured, marketed, promoted, distributed, supplied and sold the Recalled Product, one of which was implanted into Plaintiff Carolyn Jane Blakely, and is the subject of this Complaint.

6.     Defendant DCI Donor Services, Inc. d/b/a Tennessee Donor Services ("DCI") is incorporated in Tennessee and has its principal place of business at 566 Mainstream Dr., Ste. 300, Nashville, TN 37228-1234. DCI Donor Services, Inc. does business as Tennessee Donor Services and does business throughout the United States, including the State of California.

7.     DCI is engaged in the business of locating, properly identifying, qualifying, and recovering parts of human cadavers that should at all times qualify for recovery, processing, distribution and ultimately be used in a wide variety of surgical procedures where human bone, tissue, etc. can be appropriately and safely utilized.

8.     Upon information and belief, DCI harvested, recovered, processed, supplied and/or sold human tissue for use in the Recalled Product, one of which was implanted into Plaintiff, Carolyn Jane Blakely, in the State of California and which is the subject of this Complaint.

9.     Defendant Berkeley Biologics, LLC as successor to Elutia, Inc. f/k/a Aziyo Biologics, Inc. ("Berkeley"), is a Delaware Limited Liability Company with its principal place of business at 880 Harbour Way S., Suite 100, Richmond, CA 94804. Berkeley purchased Aziyo's Orthobiologics Business in 2023 and, as a result,

1  became Aziyo's direct successor.[1] As a result, any and all further references in this

2  complaint to Aziyo also include Berkeley as successor to Aziyo.

3

4      10.    Defendants Does 1-20 were responsible in some manner for injuries and

5  damages caused to Plaintiff, but their identities and/or roles are not yet known.

6

7      11.    Defendants, at all times relevant to this lawsuit, intentionally placed

8  harvested human tissue or the Recalled Product into the stream of commerce;

9  specifically manufactured, developed, designed, marketed, distributed, promoted,

10  supplied and/or otherwise sold (directly or indirectly) human tissue or the Recalled

11

12  Product to various locations for use in surgeries, including to Scripps Memorial

13  Hospital La Jolla, 9888 Genesee Ave, La Jolla, CA 92037 where Plaintiff Carolyn

14  Jane Blakely was surgically implanted with the Recalled Product that caused her to

15

16  suffer harm as described in this Complaint.

17      12.    When reference is made in this Complaint to any act or omission of the

18  Defendants, it shall be deemed that the officers, directors, agents, employees, or

19

20  representatives of the Defendants committed or authorized such acts or omissions, or

21  failed to adequately supervise, train, or property control or direct their employees

22

23  while engaged in the management, direction, operation, or control of the affairs of

24

25

26  [1] *Elutia Announces Sale of Orthobiologics Business Unit for Cash Proceeds of Up to $35 Million*, ELUTIA, (Sept. 18, 2023), https://investors.elutia.com/news-releases/news-release-details/elutia-announces-sale-orthobiologics-business-unit-cash-proceeds; *see also Sherrill et al v. Aziyo Biologics, Inc. et al*, Case No: 5:21-cv-00172-KDB-SCR (W.D.N.C), Aziyo's Opposition to Plaintiffs Motion to Compel at ECF Doc. 149 ("As Plaintiffs recognize, on November 9, 2023, Aziyo sold its orthobiologics business to Berkeley Biologics, LLC[.]")

27

28

4
COMPLAINT FOR DAMAGES

Defendants, and did so while acting within the course and scope of their duties, employment or agency.

13.    In addition, any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants.

## III.    JURISDICTION AND VENUE

14.    This claim arises out of a spinal surgery performed on April 13, 2023 on Plaintiff Carolyn Jane Blakely at Scripps Memorial Hospital La Jolla located at 9888 Genesee Ave, La Jolla, CA 92037. During this spinal surgery, Plaintiff was implanted with the Recalled Product and subsequently tested positive for tuberculosis (TB).

15.    This Court has jurisdiction over this action pursuant to Section 410.10 of the California Code of Civil Procedure because Plaintiff resides in the State of California, the surgery with the Recalled Product took place in California, Berkeley's principal place of business is in California, and DCI and Aziyo's Recalled Product that caused the injuries were sold and implanted in California.

16.    Venue is proper in San Diego County because the injury giving rise to the allegations in this Complaint occurred in San Diego County. *See* Cal. Civ. Proc. Code § 395(a).

## IV.    FACTUAL ALLEGATIONS

### a. ViBone

17. ViBone Moldable is a Viable Bone Matrix product manufactured by Aziyo (the "Recalled Product" or "ViBone").

18. ViBone is a human tissue allograft consisting of cryopreserved bone matrix that is aseptically processed to preserve native factors that support bone repair.

19. ViBone is a Human Cellular and Tissue Based Product (HCT/P) per 21 CFR Part 1271 and is preserved in 5% dimethyl sulfoxide (DMSO) in a 0.9% sodium chloride solution.

20. According to the ViBone package insert, the Recalled Product was prepared from a donor determined to be eligible by the Medical Director of Aziyo or physician designee based on the results of screening and testing.

21. Aziyo represented through its package insert that the donor used to make the Recalled Product was screened for high risk behavior and contraindications to transplant through medical/social history interview, review of medical records, physical assessment, and review of post mortem-examination results (when applicable).

22. In conducting its donor screening for ViBone, Aziyo also represented through its package insert that the "Donor eligibility determination was made by Aziyo … in compliance with U.S. FDA regulations (21 CFR 1270 and 1271) and American Association of Tissue Banks® (AATB®) Standards."

### b. **The Recall**

23.    On July 13, 2023, Aziyo announced a voluntary recall of ViBone, which included the Recalled Product that had been implanted into Plaintiff.[2] The Recalled Products were derived from the same lot of human tissue from a single donor (Donor #TDS222820) and were primarily used in surgical and dental procedures.

24.    In the recall notice, Aziyo advised that the "[n]otice of the voluntary recall was issued ... after the Company learned of post-surgical Mycobacterium tuberculosis infections in two patients treated with viable bone matrix product from a single donor lot."[3]

25.    Shipments of the Recalled Products "were sent to thirteen facilities in seven states (California, Louisiana, Michigan, New York, Oregon, Texas, and Virginia between February 27, 2023, and June 20, 2023."[4]

---

[2] *Tuberculosis (TB) Disease Associated with Suspected Contaminated Viable Bone Matrix Material Used in Surgical and Dental Procedures*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://archive.cdc.gov/#/details?url=https://www.cdc.gov/hai/outbreaks/TB-bone-allograft.html (last updated August 11, 2023) (hereinafter *CDC article*); *see also Aziyo Biologics Announces Voluntary Recall of Viable Bone Matrix Products,* ELUTIA, (July 13, 2023) available at https://investors.aziyo.com/news-releases/news-release-details/aziyo-biologics-announces-voluntary-recall-viable-bone-matrix.

[3] *See Aziyo Biologics Announces Voluntary Recall of Viable Bone Matrix Products,* ELUTIA, (July 13, 2023) available at https://investors.aziyo.com/news-releases/news-release-details/aziyo-biologics-announces-voluntary-recall-viable-bone-matrix.

[4] *See CDC Article.*

26.    The CDC also recommended that "all patients who received [the Recalled Products] begin treatment for TB disease, even if they do not have any symptoms."[5]

### c. Aziyo's Nearly Identical Recall in 2021

27.    Defendant Aziyo issued a nearly identical recall in 2021 when it was forced to recall its FiberCel Viable Bone Matrix product ("FiberCel") after patients receiving "FiberCel" tested positive for tuberculosis.[6]

28.    Defendant DCI was also involved with the 2021 recall of FiberCel as DCI was responsible for harvesting the human tissue that was supplied for the contaminated FiberCel.

29.    Due to this earlier recall, Defendants, as the harvester and final processor of live cell tissue products, should have been on notice of the need for heightened screening standards to prevent another tuberculosis outbreak, but failed to take appropriate action to prevent another tuberculosis outbreak.

30.    An August 17, 2023 letter from Congresswoman Debbie Dingell to the Commissioner of the FDA and the Director of the CDC highlights the concerning revelations surrounding Aziyo's second product recall in just two years:

---

[5] *Id.*

[6] *Urgent Voluntary Notification: FiberCel Fiber Viable Bone Matrix ("FiberCel") - Lot Number: NMDS210011, Food*, U.S. FOOD AND DRUG ADMINISTRATION, (June 2, 2021) available at https://www.fda.gov/vaccines-blood-biologics/recalls-biologics/urgent-voluntary-notification-fibercel-fiber-viable-bone-matrix-fibercel-lot-number-nmds210011

"While Aziyo Biologics has issued a voluntary recall of its bone matrix products, I remain seriously concerned about the company's troubling history. This new outbreak follows a similar outbreak in 2021 that is also linked to contaminated products from Aziyo Biologics. According to a review published in the National Library of Medicine, bone tissue was procured from a tissue donor who had unrecognized signs consistent with tuberculosis. Units of the bone graft product were implanted into 113 recipients in 18 states between March 1 and April 2, 2021. Of those 113 patients, at least 87 patients developed TB, and eight died after receiving the contaminated bone matrix material."

***"It is unacceptable another outbreak of this kind to occur at all—let alone another outbreak from the same company—due to TB-contaminated materials."***

31.    An investigation of the 2023 Recall revealed that the donor had a documented cause of death as sepsis, yet DCI still harvested the donor's tissue and Aziyo processed the donor's tissue into a live cell product.[7]

### d. Aziyo and DCI's Systemic Failures

32.    On June 28, 2024, Berkeley Biologics, LLC, received a Warning Letter from the FDA regarding an FDA inspection conducted from September 5, 2023 to September 25, 2023. The inspection detailed systemic issues with Aziyo/Berkeley's manufacturing process including Aziyo/Berkeley's willingness to accept septic donors:

---

[7] *Second Nationwide Tuberculosis Outbreak Caused by Bone Allografts Containing Live Cells — United States, 2023*, MORBIDITY AND MORTALITY WEEKLY REPORT (CDC) (Jan. 5, 2024), available at https://www.cdc.gov/mmwr/volumes/72/wr/mm725253a1.htm?s_cid=mm725253a1_w

**[Y]ou failed to determine as ineligible (b)(4) deceased donors who have a documented medical diagnosis of sepsis. As discussed in the 2007 *Guidance for Industry: Eligibility Determination for Donors of Human Cells, Tissues, and Cellular and Tissue-Based Products (HCT/Ps)* (2007 DE Guidance), donor screening to reduce the risk of transmission of disease agents associated with sepsis is required. Tissues from these donors were manufactured into FVBM and OVM, and distributed for implantation into patients/recipients, some of which were associated with an outbreak of *Mycobacterium tuberculosis* infections. It appears this is a systemic issue not limited to these (b)(4) donors or products because this violation resulted from you following your SOP-0006 *Donor Eligibility Determination Criteria*, which does not require you to determine as ineligible a donor who is identified as having a risk factor for, or clinical evidence of, sepsis.** [8]

33.    Upon information and belief, Berkeley in its position as successor to Aziyo, received the Warning Letter, handled all subsequent communications concerning the Warning Letter, and accepted the responsibility for the same from Aziyo.

34.    In a similar manner, DCI also received an investigative report from the FDA for an inspection conducted by the FDA of DCI during nearly an identical time period: September 5, 2023 through September 29, 2023, in which it was noted that DCI deemed 99 septic donors suitable for recovery.

---

[8] *See* Karlton Watson, *Warning Letter: Berkeley Biologics, LLC, previously operating as Elutia, Inc. – Orthobiologics Business Unit, formerly Aziyo Biologics, Inc.*, U.S. FOOD AND DRUG ADMINISTRATION (June 28, 2024), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/berkeley-biologics-llc-previously-operating-elutia-inc-orthobiologics-business-unit-formerly-aziyo.

35.    "Sepsis occurs when your immune system has a dangerous reaction to an infection. It causes extensive inflammation throughout your body that can lead to tissue damage, organ failure and even death. Many different kinds of infections can trigger sepsis, which is a medical emergency."[9]

36.    Careful attention to a sepsis diagnosis in the medical record of a potential donor is required, especially when a donor's tissue is to be used in a live cell product.

e.    **Aziyo and DCI Failed to Take Adequate Steps to Protect Consumers Including Plaintiff**

37.    At all times relevant, Defendants designed, developed, manufactured, marketed, distributed and/or sold the Recalled Product and/or the human tissue used in the Recalled Product.

38.    Upon information and belief, Aziyo contractually retained DCI to, among other things, procure and provide the cadaveric tissue it used to manufacture the Recalled Product used in Plaintiff's surgery.

39.    The contaminated cadaveric tissue Aziyo used to manufacture the defective lot of the Recalled Products was initially procured by Tennessee Donor Services, a division of DCI Donor Services, in furtherance of DCI's contract with Aziyo.

---

[9] *Sepsis*, CLEVLAND CLINIC, available at https://my.clevelandclinic.org/health/diseases/12361-sepsis (last visited April 1, 2025).

40.   DCI knew or reasonably should have known that the defective lot of Recalled Products manufactured from the contaminated cadaveric tissue would be distributed to medical facilities and medical providers throughout the United States, including California.

41.   The Recalled Product used in Plaintiff, Carolyn Jane Blakely's surgery, was manufactured using human tissue from a single donor harvested by DCI.

42.   The single donor whose tissue was recovered by DCI and then incorporated into the Recalled Product and sold by Aziyo, had a tuberculosis infection prior to his or her death and had signs and symptoms at the time of death of an infectious etiology according to publicly available reports.

### f.  **Plaintiff Received the Contaminated Recalled Product and Suffered Severe Injury**

43.   Plaintiff Carolyn Jane Blakely underwent spinal surgery on April 13, 2023 at Scripps Memorial Hospital La Jolla, 9888 Genesee Ave, La Jolla, CA 92037.

44.   Plaintiff's surgery included utilizing the Recalled Product.

45.   Unbeknownst to Plaintiff or her surgeon, Dr. Frank Coufal MD, at the time of her surgery, the Recalled Product implanted into her was contaminated with tuberculosis.

46.   Prior to Plaintiff's physician notifying her that Defendants' Recalled Product had been recalled, Plaintiff did not have knowledge of any facts that would

have put her on notice she had suffered an injury as a result of Defendants' Recalled Product.

47. Plaintiff did not know and was unable to learn of the connection between Defendants' Recalled Product and her injuries until Plaintiff's physician advised her of the recall on or about July 17, 2023 and the fact that she may have been exposed to tuberculosis.

48. Plaintiff subsequently tested positive for tuberculosis on August 16, 2023.

49. Plaintiff's TB was caused by the contaminated Recalled Product used in her back surgery, which contained contaminated human tissue recovered by DCI and which was developed, manufactured, sold, and distributed by Aziyo.

50. Following her surgery, as a direct and proximate result of the implantation of the contaminated Recalled Product, Plaintiff was forced to undergo a grueling course of tuberculosis treatment.

51. The side effects of the TB medications upon Plaintiff were substantial.

52. Plaintiff's TB and TB medications caused Plaintiff to feel sick, fatigued, caused headaches, anxiety, neuropathy, impacted her sleep, and caused hair loss.

53. Plaintiff's TB and associated injuries were caused by her exposure to the Recalled Product used in her spinal surgery.

54.    As a substantial, direct and proximate result of the implantation of the contaminated Recalled Product, Plaintiff has suffered a series of cascading negative consequences in her life and continues to suffer to this day.

55.    Plaintiff would not have suffered from tuberculosis and the effects of the tuberculosis medications, as well as the need to undergo the treatment she has had and will in the future endure, had Defendants sold and distributed a product that was free from tuberculosis contamination.

56.    As a substantial, direct, and proximate result of Plaintiff's exposure to the Recalled Product used in her spinal surgery, Plaintiff has suffered and continues to suffer from pain and discomfort, emotional distress, the loss of daily functions, and economic loss, including, but not limited to, present and future medical expenses, all of which are a direct result of Defendants' liability producing conduct.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE
**(Against Elutia Inc. f/k/a Aziyo Biologics, Inc. and Berkeley Biologics LLC as successor to Elutia, Inc. f/k/a Aziyo Biologics, Inc. )**

57.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length in this cause of action.

58.    Aziyo owed a duty to Plaintiff to exercise reasonable care in designing, developing, researching, manufacturing, marketing, supplying, promoting, selling, testing, quality assurance, quality control, and distribution of the Recalled Product

into the stream of commerce, including a duty to assure that the Recalled Product would not cause those who used it, including Plaintiff, to suffer adverse harmful effects.

59.     Aziyo failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, selling, testing, quality assurance, quality control, and distribution of the Recalled Product.

60.     Aziyo knew or should have known that those individuals who used the defective Recalled Product were at risk for suffering harmful effects from it, including but not limited to TB, as well as other severe injuries which are permanent and lasting in nature, including physical pain, mental anguish, and diminished enjoyment of life.

61.     Aziyo was negligent in designing, developing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing, and selling the Recalled Product.  The negligence of Aziyo, its agents, servants, and employees, included, but was not limited to, the following acts and/or omissions:

    a.     Designing, developing, manufacturing, producing, creating, and/or promoting the Recalled Product without adequately, sufficiently, or thoroughly testing the Recalled Product units to ensure they were free from contamination by communicable diseases, including but not limited to, TB;

    b.     Negligently selling their Recalled Product which was contaminated with TB;

    c.     Not conducting a sufficient quality control testing program to determine whether or not the subject Recalled Product was

manufactured properly and was free from contamination or other defects making it unsafe for users of the product;

    d.    Failing to have a sufficient quality control program to ensure that the donor whose tissue was used in the Recalled Product was free from communicable disease;

    e.    Failing to adequately and properly review the entire donor chart for signs and symptoms of communicable disease;

    f.    Failing to recognize signs and symptoms of communicable disease in the donor whose tissue was used in the Recalled Product;

    g.    Negligently making a donor eligibility determination;

    h.    Failing to follow applicable statutes, regulations, FDA guidelines, AATB rules, and industry standards in determining that the donor tissue used in the Recalled Product was eligible for use;

    i.    Negligently manufacturing the Recalled Product in a manner that was dangerous to those individuals who had the Recalled Product implanted into their bodies;

    j.    Negligently and carelessly using human tissue from an unqualified and inadequately screened human donor;

    k.    Being grossly negligent by willfully ignoring factors that should have led the donor to be deemed ineligible for tissue recovery;

    l.    Acting otherwise carelessly and negligently; and

    m.    Were otherwise negligent as shall be shown through discovery and at trial.

62.    Aziyo knew or should have known that consumers such as Plaintiff would suffer foreseeable injury and be at increased risk of suffering an injury as a result of Defendant's failure to exercise ordinary care, as set forth above.

63.    Aziyo's negligence was the proximate cause of and was a substantial factor in causing Plaintiff's physical, mental, emotional injuries and harm, and economic loss.

64.    By reason of the foregoing, Aziyo is liable to Plaintiff for all of her injuries, harm, damages, and economic and non-economic losses, including punitive damages, in an amount to be determined in the future.

## SECOND CAUSE OF ACTION
## NEGLIGENCE
### (Against DCI Donor Services, Inc. d/b/a Tennessee Donor Services)

65.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length in this cause of action.

66.    DCI owed a duty to Plaintiff to exercise reasonable care in harvesting, recovering, processing, supplying, promoting, selling, testing, quality assurance, quality control, and distribution of human tissue into the stream of commerce, including a duty to assure that their human tissue, which was used in the subject Recalled Product, would not cause those who used it, including Plaintiff, to suffer adverse harmful effects.

67.    DCI failed to exercise reasonable care in the harvesting, recovering, processing, supplying, testing, quality assurance, quality control, sale, and distribution of their human tissue for use in the Recalled Product.

68.    DCI knew or should have known that those individuals who were exposed to their contaminated human tissue used in the Recalled Product were at risk

for suffering harmful effects from it, including but not limited to tuberculosis, as well as other severe injuries which are permanent and lasting in nature, physical pain, mental anguish, and diminished enjoyment of life.

69.    DCI was negligent in the harvesting, recovering, processing, supplying, testing, quality assurance, quality control, sale, and distribution of their human tissue for use in the Recalled Product.  The negligence of DCI, their agents, servants, and employees, included, but was not limited to, the following acts and/or omissions:

    a.  Harvesting, recovering, processing, and selling human tissue for use in the Recalled Product without adequately, sufficiently, or thoroughly testing the human tissue to ensure that it was free from contamination of communicable diseases, including but not limited to, TB;

    b.  Not conducting a sufficient quality control testing program to determine whether or not the subject human tissue used in the aforementioned defective Recalled Product was properly recovered and was free from contamination or other defects making it unsafe;

    c.  Failing to stop the tissue recovery process once signs and symptoms of infection were discovered in the subject donor;

    d.  Negligently harvesting, recovering, and selling human tissue for use in the Recalled Product in a manner that was dangerous to those individuals who had the Recalled Product implanted into their bodies;

    e.  Negligently and carelessly recovering tissue from an unqualified and inadequately screened human donor;

    f.  Negligently failing to screen the human donor whose tissue was used in the Recalled Product for signs of infection or disease that would have led Defendants to stop the tissue recovery process;

    g.  Negligently failing to test the human donor tissue and/or bone;

h. Were grossly negligent by willfully ignoring factors that should have led the donor to be deemed ineligible for tissue recovery;

i. Acting in bad faith by failing to recognize obvious signs and symptoms of communicable disease of the donor and instead selling contaminated human tissue from the subject donor to be used in products that would be implanted into living individuals; and

j. Acting otherwise carelessly and negligently as shall be shown through discovery and at trial.

70.    DCI knew or should have known that consumers, such as Plaintiff, would suffer foreseeable injury and be at increased risk of suffering an injury as a result of DCI's failure to exercise ordinary care, as set forth above.

71.    DCI's negligence was the proximate cause of and was a substantial factor in causing Plaintiff's physical, mental, and emotional injuries as well as economic loss.

72.    By reason of the foregoing, DCI is liable to Plaintiff for all her injuries, harm, damages, and economic and non-economic losses, which includes punitive damages, in an amount to be determined in the future.

## THIRD CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY
**(Against Elutia Inc. f/k/a Aziyo Biologics, Inc. and Berkeley Biologics LLC as successor to Elutia, Inc. f/k/a Aziyo Biologics, Inc.)**

73.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length in this cause of action.

74.    Aziyo manufactured, distributed, supplied, and sold the Recalled Product Plaintiff was exposed to that was contaminated with the bacterium Mycobacterium tuberculosis.

75.    Aziyo received a direct financial benefit from its activities and from the sale of the Recalled Product.

76.    Aziyo's role was integral to the business enterprise such that its conduct was a necessary factor in bringing the Recalled Product to the initial consumer market.

77.    Aziyo had control over, or a substantial ability to influence, the manufacturing and/or distribution process.

78.    The Recalled Product contained a manufacturing defect when it left the possession of Aziyo, namely the product was contaminated with the bacterium Mycobacterium tuberculosis, which causes the disease tuberculosis.

79.    The Recalled Product was also defective in its design as it was derived from human tissue that was not appropriately screened, inspected, or tested for relevant communicable disease, including tuberculosis, and thereby permitted said harmful pathogens to be transmitted to those who were exposed to the product, such as Plaintiff.

80.    Because of these defects in the design of the Recalled Product, the aforementioned product did not perform as safely as an ordinary consumer or healthcare provider would have expected them to perform when used in an intended or reasonably foreseeable way.

81.    The Recalled Product had potential risks that were known or knowable by Aziyo in light of the scientific and medical knowledge that was generally accepted in the scientific community at the time of manufacture, namely that the human cadaveric tissue from which they were derived could be contaminated with relevant communicable diseases including tuberculosis.

82.    The potential risks posed by the Recalled Product presented a substantial danger when said product was used in an intended or reasonably foreseeable way.

83.    Ordinary consumers, including Plaintiff, would not have recognized the potential risks posed by the Recalled Product.

84.    The Recalled Product was further defective and unreasonably dangerous in that it failed to include an adequate warning or instruction to healthcare providers and patients, including Plaintiff, concerning the specific and foreseeable risk of a tuberculosis infection from the use of the Recalled Product.

85.    Defendants had a continuing duty to warn physicians of the risks posed by Recalled Product as long as they were in use.

86.    Plaintiff was harmed as a direct and proximate result of the manufacturing, design, and warning defects that existed in the Recalled Product.

87.    The manufacturing, design, and warning defects present in the Recalled Product were substantial factors in causing Plaintiff's harm.

88.    As a direct and proximate result of the manufacturing, design, and warning defects present in the Recalled Product, Plaintiff suffered damages including

serious personal injury and illness, pain and suffering, past and future medical costs and expenses, past and future medical monitoring, inconvenience, and loss of enjoyment and quality of life.

89.   By reason of the foregoing, Aziyo is liable to Plaintiff for all of her injuries, harm, damages, and economic and non-economic losses in an amount to be determined in the future including punitive damages.

### FOURTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(Against Elutia Inc. f/k/a Aziyo Biologics, Inc. and Berkeley Biologics, LLC as successor to Elutia, Inc. f/k/a Aziyo Biologics, Inc.)

90.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length in this cause of action.

91.   Aziyo is in the business of selling human tissue based medical products and is considered a merchant in that it designs, manufactures, tests, supplies, sells, and places into the stream of commerce certain goods, which included the Recalled Product.

92.   An implied warranty that the goods were merchantable arose by operation of law as part of the sale. *See* California Commercial Code § 2314.

93.   By placing the Recalled Product into the stream of commerce, Aziyo impliedly warranted that such products were merchantable and fit and safe for their intended use.

94.    The Recalled Product placed into the stream of commerce by Aziyo and implanted into Plaintiff was contaminated with tuberculosis, which led to those persons who received the Recalled Product, including Plaintiff, to develop tuberculosis.

95.    Accordingly, the Recalled Product was not fit, safe, or merchantable for its intended use.

96.    The contamination in the Recalled Product, manufactured, supplied, and placed into the stream of commerce by Aziyo was present at the time the Recalled Product left Aziyo's control and at the time a Recalled Product was implanted into Plaintiff as part of her spinal operation.

97.    Aziyo breached the implied warranty for the Recalled Products because they were contaminated, unmerchantable, and not fit for their intended purpose, resulting in personal injuries suffered by Plaintiff, including her development of tuberculosis.

98.    Plaintiff was a foreseeable user of the Recalled Products designed, manufactured, and placed into the stream of commerce by Aziyo.

99.    By reason of the foregoing, Aziyo is liable to Plaintiff for all of her injuries, harm, damages, and economic and non-economic losses, which includes punitive damages, in an amount to be determined in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief against Defendants, as follows:

a.      Compensatory damages, exclusive of interest and costs, and in an amount to fully compensate Plaintiff for all past, present, and future pain, and suffering;

b.      Special damages, exclusive of interest and costs, and in an amount to fully compensate Plaintiff for all of her injuries and damages, both past and present;

c.      Punitive and/or exemplary damages for the outrageous, willful and wanton, and reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct;

d.      For equitable/injunctive relief as may be appropriate including but not limited to a temporary, permanent or a final injunction;

e.      To the extent the law may allow the same, an award of expenses and costs of this action, as well as any attorney fees that may be applicable;

f.      Pre-judgment and post-judgment interest in the maximum amount allowed by law; and

g.      Such further relief as this Court deems necessary, just, and proper.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial.

*[signatures on the next page]*

1  Respectfully submitted this 30th day of June, 2025.

2
3                          /s/ Jeff Westerman
                           Jeff Westerman (SBN 94559)
4                          **ZIMMERMAN REED LLP**
                           6420 Wilshire Blvd, Suite 1080
5                          Los Angeles, CA 90048
                           Phone: (877) 500-8780
6                          Fax: (877) 500-8781
7                          jeff.westerman@zimmreed.com

8
                           Lawrence R. Cohan, Esq.*
9                          Joshua C. Cohan, Esq. *
                           David C. Magagna Jr, Esq *
10                         **SALTZ MONGELUZZI**
11                         **& BENDESKY P.C.**
                           One Liberty Place, 52nd Floor
12                         1650 Market Street
13                         Philadelphia, PA 19103
                           Phone: (215) 486-8282
14                         Fax: (215) 496-0999
15                         lcohan@smbb.com
                           jcohan@smbb.com
16                         dmagagna@smbb.com
17
18                         *Pro hac vices forthcoming*

19                          *On behalf of Plaintiff*

20
21
22
23
24
25
26
27
28

**COMPLAINT FOR DAMAGES**

**- DO NOT FILE WITH THE COURT -**
**- UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585 -**

**CIV-050**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*:<br>Jeff Westerman (SBN 94559)<br>6420 Wilshire Blvd Suite 1080, Los Angeles, CA 90048 | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|
| ATTORNEY FOR *(name)*:  Plaintiff Carolyn Jane Blakely | | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 325 South Melrose Drive, Vista, CA 92081
MAILING ADDRESS: 325 South Melrose Drive, Vista, CA 92081
CITY AND ZIP CODE: Vista, 92081
BRANCH NAME: North County

PLAINTIFF: CAROLYN JANE BLAKELY
DEFENDANT: ELUTIA, INC. F/K/A AZIYO BIOLOGICS, INC ET. AL.

| STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | CASE NUMBER:<br>25CL034550N |
|---|---|

To *(name of one defendant only)*:  BERKELEY BIOLOGICS, LLC.
Plaintiff *(name of one plaintiff only)*:  CAROLYN JANE BLAKELY
seeks damages in the above-entitled action, as follows:

AMOUNT

1. **General damages**
   a. ☒ Pain, suffering, and inconvenience ................................................................ $ In excess of $3,000,000 according to proof
   b. ☒ Emotional distress. ................................................................................ $ In excess of $3,000,000 according to proof
   c. ☐ Loss of consortium ................................................................................ $ _____
   d. ☐ Loss of society and companionship *(wrongful death actions only)* ...................... $ _____
   e. ☒ Other *(specify)*:  costs of suit ................................................................ $ Amount to be proven
   f. ☐ Other *(specify)*:  pre and post-judgment interest ........................................ $ Amount to be proven
   g. ☐ Continued on Attachment 1.g.

2. **Special damages**
   a. ☒ Medical expenses *(to date)* ................................................................... $ In excess of $25,000 and according to proof
   b. ☒ Future medical expenses *(present value)* .................................................. $ Amount to be proven
   c. ☐ Loss of earnings *(to date)* ................................................................... $ _____
   d. ☐ Loss of future earning capacity *(present value)* .......................................... $ _____
   e. ☐ Property damage .................................................................................. $ _____
   f. ☐ Funeral expenses *(wrongful death actions only)* .......................................... $ _____
   g. ☐ Future contributions *(present value)* *(wrongful death actions only)* ................... $ _____
   h. ☐ Value of personal service, advice, or training *(wrongful death actions only)* ......... $ _____
   i. ☐ Other *(specify)* ............................................................................... $ _____
   j. ☐ Other *(specify)* ............................................................................... $ _____
   k. ☐ Continued on Attachment 2.k.

3. ☒ **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of *(specify)*... $ In excess of $10,000,000 and according to proof
   when pursuing a judgment in the suit filed against you.

Date: 8/4/2025

CAROLYN JANE BLAKELY
_____
(TYPE OR PRINT NAME)

/s/ Jeff Westerman
_____
(SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

(Proof of service on reverse)

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-050 [Rev. July 1, 2025] | STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | Code of Civil Procedure, §§ 425.11, 425.115<br>courts.ca.gov |
|---|---|---|

**CIV-050**

| | |
|---|---|
| PLAINTIFF: CAROLYN JANE BLAKELY<br>DEFENDANT: ELUTIA, INC. F/K/A AZIYO BIOLOGICS, INC ET. AL. | CASE NUMBER:<br>25CL034550N |

### PROOF OF SERVICE

*(After having the other party served as described below, with any of the documents identified in item 1, have the person who served the documents complete this Proof of Service. Plaintiff cannot serve these papers.)*

1. I served the
   - a. ☐ Statement of Damages  ☐ Other  *(specify)*:
   - b. on *(name)*:
   - c. by serving ☐ defendant  ☐ other  *(name and title or relationship to person served)*:
   - d. ☐ by delivery  ☐ at home  ☐ at business
     - (1) date:
     - (2) time:
     - (3) address:
   - e. ☐ by mailing
     - (1) date:
     - (2) place:

2. Manner of service *(check proper box)*:
   - a. ☐ **Personal service.** By personally delivering copies. (Code Civ. Proc., § 415.10.)
   - b. ☐ **Substituted service on corporation, unincorporated association (including partnership), or public entity.** By leaving, during usual office hours, copies in the office of the person served with the person who apparently was in charge and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (Code Civ. Proc., § 415.20(a).)
   - c. ☐ **Substituted service on natural person, minor, conservatee, or candidate.** By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of the office or place of business, at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (Code Civ. Proc., § 415.20(b).) **(Attach separate declaration or affidavit stating acts relied on to establish reasonable diligence in first attempting personal service.)**
   - d. ☐ **Mail and acknowledgment service.** By mailing (by first-class mail or airmail, postage prepaid) copies to the person served, together with two copies of the form of notice and acknowledgment and a return envelope, postage prepaid, addressed to the sender. (Code Civ. Proc., § 415.30.) **(Attach completed acknowledgment of receipt.)**
   - e. ☐ **Certified or registered mail service.** By mailing to an address outside California (by first-class mail, postage prepaid, requiring a return receipt) copies to the person served. (Code Civ. Proc., § 415.40.) **(Attach signed return receipt or other evidence of actual delivery to the person served.)**
   - f. ☐ Other *(specify code section)*:
     - ☐ additional page is attached.

3. At the time of service I was at least 18 years of age and not a party to this action.
4. Fee for service: $
5. Person serving:
   - a. ☐ California sheriff, marshal, or constable.
   - b. ☐ Registered California process server.
   - c. ☐ Employee or independent contractor of a registered California process server.
   - d. ☐ Not a registered California process server.
   - e. ☐ Exempt from registration under Business and Professions Code section 22350(b)

   f. Name, address, and telephone number and, if applicable, county of registration and number:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶ _____
   (SIGNATURE)

*(For California sheriff, marshal, or constable use only)*
I certify that the foregoing is true and correct.

Date:

▶ _____
   (SIGNATURE)

**PROOF OF SERVICE**
**(Statement of Damages)**
