

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN JANE BLAKELY,<br><br>Plaintiff,<br><br>v.<br><br>ELUTIA, INC. F/K/A AZIYO BIOLOGICS, INC., et al.,<br><br>Defendants. | Case No.: 3:25-cv-02330-CAB-DEB<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION OF CROSSCLAIM**<br><br>[Doc. No. 31] |

On February 27, 2026, Defendant Elutia, Inc., f/k/a Aziyo Biologics, Inc. ("Elutia" or "Aziyo") filed a motion to compel arbitration as to the crossclaim filed by Defendant DCI Donor Services Inc., d/b/a Tennessee Donor Services ("DCI"). [Doc. No. 31.] The motion has been fully briefed and the Court finds it suitable for determination on the papers. *See* CivLR 7.1(d)(1). For the following reasons, the Court **GRANTS** Elutia's motion to compel arbitration.

## I.    BACKGROUND

This case arises out of a spinal surgery performed on Plaintiff Carolyn Jane Blakely in La Jolla, California on April 13, 2023. [Doc. No. 1-2 ("Compl." or "Complaint") at ¶ 14.] Plaintiff alleges that during this spinal surgery, she was implanted with the ViBone product (the "Recalled Product") and subsequently tested positive for tuberculosis. [*Id.*]

The Recalled Product is a human tissue allograft consisting of cryopreserved bone matrix that is aseptically processed to preserve native factors that support bone repair. [*Id.* at ¶ 18.]

DCI filed a crossclaim against Elutia for breach of contract, express indemnity, equitable indemnity, contribution, and declaratory relief. [*See generally* Doc. No. 25 ("Crossclaim").] Elutia now moves to compel DCI to arbitrate its crossclaim based upon a Cadaveric Tissue Recovery and Services Agreement, [Doc. No. 30 ("Agreement")], which Elutia asserts includes an enforceable arbitration requirement. [Doc. No. 31 at 1.] Elutia also argues, as an alternative to its motion to compel arbitration, that the Court should dismiss this claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). [*Id.*] The Court will address both subject matter jurisdiction and arbitration in turn.

## II.    DISCUSSION

### A.    ELUTIA'S 12(B)(1) ARGUMENT

Elutia argues as an alternative to its motion to compel arbitration that the Court should dismiss the crossclaim for lack of subject matter jurisdiction under Rule 12(b)(1). [Doc. No. 31-1 at 14–15.] The Court begins its analysis with this argument, as it cannot compel arbitration if it lacks jurisdiction over the claims.

### 1.    Legal Standard

A party may challenge the Court's subject-matter jurisdiction through a motion filed pursuant to Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Because "[f]ederal courts are courts of limited jurisdiction[,]" "[i]t is to be presumed that a cause lies outside this limited jurisdiction[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Consequently, "the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Id.* "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White*, 227 F.3d at 1242. "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)

3:25-cv-02330-CAB-DEB

(quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.* (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

"A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof'" and "prov[e] by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Id.* (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010)). Generally, "if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Id.* at 1121–22.

## 2. Discussion

Elutia argues that the Court lacks subject matter jurisdiction over a crossclaim for indemnification because it is not yet ripe, and thus presently non-justiciable. [Doc. No. 31-1 at 14–15.] Specifically, it argues that "[DCI's] [crossclaim] is patently unripe for review because [DCI] has not submitted to any portion of the alternative dispute resolution process as required by the Agreement." [*Id.* at 15.] "As a result, [DCI] cannot show any concrete injury or imminent harm." [*Id.*] DCI disagrees, arguing that "[t]his Court has subject matter jurisdiction over the issues raised in the crossclaim since . . . there is no mandatory language requiring arbitration and no exclusivity language to render arbitration as the sole dispute resolution or to preclude litigation." [Doc. No. 33 at 7.]

Rule 13, however, provides that a "crossclaim may include a claim that the coparty is *or may be liable* to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant." Fed. R. Civ. P. 13(g) (emphasis added). Where the action's central claims are ripe, then, a crossclaim "for indemnification or contribution need not be

3:25-cv-02330-CAB-DEB

mature at the time of pleading." *Garot v. Cnty. of San Diego*, No. 19-CV-01650-H-AGS, 2021 WL 51415, at *4 (S.D. Cal. Jan. 5, 2021) (collecting cases); *see also Glens Falls Indem. Co. v. U.S. ex rel. & to Use of Westinghouse Elec. Supply Co.*, 229 F.2d 370, 373 (9th Cir. 1955) ("Claims under [Rule 13 or 14] must arise out of the transaction or occurrence on which the original action is based and . . . can be asserted even if liability is only contingent or a mere possibility."). Elutia cites *Cristo v. U.S. Sec. & Exch. Comm'n* to argue that the crossclaim is not yet ripe. No. 19CV1910-GP-MDD, 2020 WL 4040340, at *5 (S.D. Cal. July 17, 2020); Doc. No. 31-1 at 15. However, *Cristo* did not involve a Rule 13 crossclaim, and the Court finds that case irrelevant here.

Here, DCI alleges that "[Elutia's] failure and refusal [to] indemnify, defend, and hold harmless [DCI] in connection with the claims, demands, and losses arising out of Plaintiffs' underlying Complaint[] constitutes a breach of the very terms of the Agreement." [Crossclaim ¶ 8.] Thus, the crossclaim arises from the same transaction or occurrence as the original cause of action—Plaintiffs' allegedly defective transplant. As DCI's claims are therefore a proper crossclaim in Plaintiff's action, the Court **DENIES** Elutia's motion to dismiss under Rule 12(b)(1). As to the related argument that the arbitration issue is not "ripe" because of language requiring informal resolution or mediation, that issue does not truly involve standing or jurisdiction, but instead rests on whether the parties entered into an arbitration agreement and whether such an agreement requires arbitration at this time. Thus, the Court will address it below.

### B. ELUTIA'S MOTION TO COMPEL ARBITRATION

As the Court has jurisdiction, it turns to Elutia's motion to compel arbitration.

### 1. Legal Standard

The Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district

3:25-cv-02330-CAB-DEB

court shall issue an order compelling arbitration. *Id.* The FAA espouses a general federal policy favoring arbitration agreements. *AT & T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011). Accordingly, federal courts are required to rigorously enforce an agreement to arbitrate. *See id.* Courts must give due regard to the federal policy favoring arbitration and any "ambiguities as to the scope of the arbitration clause . . . [are] resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989).

When determining whether to compel a party to arbitrate, the Court may not review the merits of the dispute; rather, the Court's role under the FAA is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). If the Court finds that the answers to those questions are yes, it must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). If there is a genuine dispute of material fact as to any of these queries, a court should apply a "standard similar to the summary judgment standard of Fed. R. Civ. P. 56." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).

In assessing a purported arbitration agreement, "the 'fundamental principle [is] that arbitration is a matter of contract . . . [.]'" *AT&T Mobility*, 563 U.S. at 339 (quoting *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Accordingly, courts must apply ordinary state law principles in determining an arbitration agreement's validity. *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002). Agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . [.]" 9 U.S.C. § 2. As such, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. *AT&T Mobility*, 563 U.S. at 339–41.

### 2. Discussion

Elutia argues that the Court should compel arbitration because: (1) the Agreement contains an enforceable arbitration clause; and (2) the Agreement encompasses DCI's

crossclaim.  [Doc. No. 31-1 at 9–14.]  DCI argues in opposition that: (1) the Agreement does not strictly require arbitration nor prohibit litigation; and (2) the motion to compel is premature because the parties have not engaged in required predicate attempts at resolution.  [Doc. No. 33 at 2–7.]  The parties do not dispute the Agreement's actual language or its validity, but merely the relevant clause's interpretation.  [*See generally* Doc. Nos. 31-1, 33.]  Likewise, DCI does not appear to contest that, if the Agreement requires arbitration, this action would fall under its purview.  [*See generally* Doc. No. 33.]

As a preliminary matter, Elutia and DCI agree that Maryland law governs the Agreement, based on the choice-of-law clause within it.  [Doc. No. 31-1 at 9; Doc. No. 33 at 4; Agreement at 9.]  Seeing no reason to proceed otherwise, the Court will apply Maryland law.  *See In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167–68 (N.D. Cal. 2016) (discussing choice-of-law provisions and district courts in California).

"Maryland follows the law of objective contract interpretation."  *Sy-Lene of Washington, Inc. v. Starwood Urb. Retail II, LLC*, 829 A.2d 540, 546 (Md. Ct. App. 2003) (collecting cases); *Freedman v. Comcast Corp.*, 988 A.2d 68, 76 (Md. Ct. Special App. 2010).  "A court construing an agreement under this objective test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated."  *Freedman*, 988 A.2d at 76 (quoting *Koons Ford of Balt., Inc. v. Lobach*, 919 A.2d 722, 728 (Md. Ct. App. 2007)); *see also Sy-Lene of Washington, Inc.*, 829 A.2d at 546–47.  "[W]hen the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed."  *Freedman*, 988 A.2d at 76 (quoting *Koons Ford of Balt., Inc.*, 919 A.2d at 728).

///

///

///

///

3:25-cv-02330-CAB-DEB

Here, the relevant language is in § 7.4 of the Agreement in a section entitled "Dispute Resolution" and states as follows:

> In the event of any dispute, claim, question, or disagreement arising from or relating to this Agreement or the breach thereof, the Parties hereto shall use their best efforts to settle the dispute, claim, question, or disagreement. To this effect, the Parties shall consult and negotiate with each other in good faith and, recognizing their mutual interests and acknowledging the purpose of the Agreement, attempt to reach a just and equitable solution satisfactory to both [P]arties. If the parties are unable to reach a solution, the Parties agree to submit the dispute to a mediator, selected and agreed upon by both Parties. If such mediation is unsuccessful in the resolution of the dispute, either Party may, upon notice to the other Party, demand that the dispute be resolved by arbitration in accordance with the Rules of the American Arbitration Association. Each Party hereby consents to any such dispute being so resolved, and agrees that any court of competent jurisdiction may enter any judgment rendered by the Arbitrator(s) as a final judgment, binding on both Parties.

[Agreement at 9.]

According to Elutia, § 7.4 "[b]y its plain language, . . . covers [DCI's crossclaim], [which is] rooted in conditional claims that, to the extent Elutia breached the Agreement, it may be obligated to indemnify [DCI] under the terms of the Agreement" and that "[a]s a result, [DCI's crossclaim is] subject to the Agreement's alternative dispute resolution procedure and thus [is] not properly asserted in this Court." [Doc. No. 31-1 at 13.]

DCI, to the contrary, reads the provision to:

> merely provide[] options and steps to deal with disputes . . . [.] The parties choice of verbiage must be considered. The first step uses the word "shall" negotiate in good faith. The second step indicates [they] agree to seek mediation. The third step uses the word "may" seek arbitration. The use of the permissive term "may" indicates the intent to only propose arbitration as an option, not as a requirement, and only after other resolution attempts have failed. Therefore, any decision to forgo arbitration does not prevent [DCI] from pursuing its [crossclaim] . . . [.]

[Doc. No. 33 at 5–6.] Elutia rejects this reading. [*See* Doc. No. 36 at 2–5.]

3:25-cv-02330-CAB-DEB

The language at issue here is not novel.  The court in *Freedman* examined a nearly identical term, rejecting an argument that "the clause 'you or Comcast may elect to arbitrate that [d]ispute' implies that, because 'Appellant acted first, electing to litigate in court,' the dispute must be heard in court."  988 A.2d at 78.  Instead, the *Freedman* court found that "the plain and common-sense reading of the clause . . . is that if either party elects to arbitrate the dispute, it must be arbitrated."  *Id.*; *see also McCrea v. Drs. Copeland, Hyman & Shackman, P.A.*, 945 F. Supp. 879, 881–82 (D. Md. 1996) (assessing similar language and collecting cases).  Thus, under Maryland law, this usage of "may" is not permissive, as DCI argues, but instead renders arbitration mandatory upon a party's timely request.[1]  Additionally, as Elutia argues, it appears that at least two other district courts have reached this same conclusion in a dispute between DCI and Elutia over this language.  *See Wilcox v. Aziyo Biologics, Inc.*, No. 1:23-CV-619, 2023 WL 11717093, at *2–3 (E.D. Va. Aug. 30, 2023); *See LaBarge v. Elutia, Inc.*, No. 3:24-CV-1857-MMA-DEB, 2025 WL 2440724, at *5–6 (S.D. Cal. Aug. 25, 2025).  As the language here is the same as in those other district court cases, the Court adopts the same interpretation.

DCI's arguments to the contrary are unconvincing.  Its interpretation, that the arbitration clause is permissive and allows for litigation instead of arbitration, requires contorting the clause and rendering it meaningless.  Were the Court to interpret the Agreement accordingly, neither party could truly invoke arbitration, they could merely suggest it subject to the other's agreement.  Specifically identifying arbitration as a means of resolution then serves no purpose, as any other resolution would ostensibly be equally available once mediation fails.  DCI's version also renders the notice and consent language of the arbitration clause mere surplusage, despite a plain reading imposing substantive duties and consents.  [*See* Agreement at 9 ("[E]ither Party may, upon notice to the other

---

[1] Courts interpreting similar language according to California law have agreed.  *See, e.g., Boudreau v. Am. Home Shield Corp.*, No. 23-CV-681-WQH-BGS, 2024 WL 2786048, *4–5 (S.D. Cal. Feb. 28, 2024) (collecting cases).

3:25-cv-02330-CAB-DEB

Party, demand that the dispute be resolved by arbitration . . . [.] Each Party hereby consents to any such dispute being so resolved . . . [.]”).] In short, the Agreement unambiguously requires arbitration, and DCI's argument cannot withstand scrutiny. *See also Freedman*, 988 A.2d at 78 (“We will not discuss every permutation because it suffices to say that the clause gives *either* party the option to compel *arbitration*, but . . . *neither* party the option to compel *litigation*.” (emphasis in original)).

DCI also argues that “[Elutia] has not engaged in informal negotiations, has never responded to [DCI]'s tender, and has not requested to mediate[,]” nor made demands for arbitration. [Doc. No. 33 at 7.] According to DCI, “[a] notice to seek arbitration is specifically reserved after exhaustion of informal negotiations and failure of resolution through mediation[,]” and thus Elutia may not demand arbitration. *Id.* Elutia argues that DCI, not itself, has refused to engage and negotiate as the Agreement requires. [Doc. No. 31-1 at 8; Doc. No. 36 at 5–6.] Regardless of who failed to satisfy their duties to whom, “any issues about whether those pre-conditions to arbitration have been satisfied are to be decided by the arbitrator, not this Court.” *Wilcox*, 2023 WL 11717093, at *3 (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557–58 (1964)); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (citing same). Thus, the Court **GRANTS** Elutia's motion to compel arbitration.

### III.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Elutia's motion to dismiss the crossclaim for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and **GRANTS** Elutia's motion to compel arbitration. [Doc. No. 31.] The Court **ORDERS** Elutia and DCI to arbitration to address DCI's crossclaim.

///

///

///

///

///

3:25-cv-02330-CAB-DEB

Elutia and DCI shall file a joint status report **within 7 days** of the conclusion of arbitration proceedings.

It is **SO ORDERED**.

Dated:  May 21, 2026

_____
Hon. Cathy Ann Bencivengo
United States District Judge

3:25-cv-02330-CAB-DEB